NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190606-U

NO. 4-19-0606

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 27, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.P., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Macon County |
| Petitioner-Appellee, | ) | No. 18JA12 |
| v. | ) | |
| Melvin P., | ) | Honorable |
| Respondent-Appellant). | ) | Thomas E. Little, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Steigmann and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding the trial court's findings respondent was an unfit parent and it was in the minor's best interest to terminate his parental rights were not against the manifest weight of the evidence.

¶ 2    Respondent father, Melvin P., appeals from the trial court's order terminating his parental rights to A.P. (born November 28, 2006). Respondent argues the trial court's findings he was an unfit parent and it was in the minor's best interest to terminate his parental rights were against the manifest weight of the evidence. We disagree and affirm.

¶ 3    I. BACKGROUND

¶ 4    A. Motion to Terminate Parental Rights

¶ 5    In June 2019, the State filed a motion to terminate respondent's and Heather P.'s parental rights to A.P., alleging they were unfit parents and it was in the minor's best interest to terminate their parental rights and appoint the Department of Children and Family Services

(DCFS) as guardian with the power to consent to adoption. With respect to respondent, the State specifically alleged he was an unfit parent as he failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) make reasonable efforts to correct the conditions that were the basis for the removal of the minor during any nine-month period following the March 7, 2018, adjudication of neglected (750 ILCS 50/1(D)(m)(i) (West 2018)); and (3) make reasonable progress toward the return of the minor to his care within any nine-month period following the March 7, 2018, adjudication of neglected, namely March 8, 2018, to December 8, 2018, and September 14, 2018, to June 14, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)).

¶ 6                                B. Fitness Hearing

¶ 7            In July 2019, the trial court held a fitness hearing. The court heard testimony from a foster care case manager, foster care assistant, foster care case aide, and court appointed special advocate. The following is gleaned from the testimony presented.

¶ 8            The minor was taken into DCFS care due to concerns with (1) respondent's and Heather P.'s substance abuse and (2) the environment in which the minor was living. Specifically, DCFS learned respondent and Heather P. had been using "K2" and the family home had no power or water during the winter.

¶ 9            Respondent was recommended parenting, mental-health, and substance-abuse services. Respondent completed parenting services. Respondent took mental-health and substance-abuse assessments, both of which did not recommend treatment. Respondent stopped using "K2," and he and Heather P. maintained adequate housing.

¶ 10            As the case progressed, respondent began testing positive on drug screens. It was

then recommended he complete another substance-abuse assessment. Respondent completed the assessment, which recommended outpatient treatment and continued drug screens. The case manager spoke with respondent about the need to enroll in outpatient treatment and attend drug screens to have the minor returned to his care. The case manager testified respondent at one point was "very adamant that he just needed to work and didn't need to have the additional help."

¶ 11 Between February 2018 and August 2019, respondent was required to complete drug screens at a clinic twice a week. Respondent tested positive on 16 drug screens and failed to appear for 51 drug screens. Respondent reported he could not attend the drug screens because he had to work. Respondent worked two jobs. Due to the missed drug screens at the clinic, the case manager had respondent complete drug screens when he presented himself for supervised visitations with the minor. Respondent's drug screens occasionally tested positive for cocaine, and one of the screens tested positive for "K2." The case manager testified the drug screens would be negative for a few months and then come back positive. Since February 2019, respondent had completed approximately four drug screens. On February 7 and July 9, 2019, respondent tested positive for cocaine. Respondent never enrolled in recommended outpatient treatment.

¶ 12 Respondent had inconsistent visitation with the minor, reporting he could not attend all visitations because he had to work. The case manager tried to accommodate respondent's work schedule by having visitation supervised by the minor's grandmother, who, at the time, was also serving as the minor's foster parent. Due to positive drug screens, visitation was later changed back to being agency supervised. The visitations respondent attended went well, and the minor was bonded to respondent. Since February 2019, respondent had attended approximately four visits. Respondent's attendance at visitations decreased in the months prior to the hearing.

¶ 13　　　　The minor was aware of her parent's substance abuse and expressed frustration with not knowing when she would be able to return to her parents. She began to struggle academically and expressed disappointment with both herself and her parents. The minor attended therapy to deal with these issues.

¶ 14　　　　The case manager testified she did not believe respondent would be able to meet minimal parenting standards of being drug free within the next six months to have the minor returned to his care.

¶ 15　　　　Based on this evidence, the trial court found respondent was an unfit parent for all the reasons alleged in the State's motion to terminate parental rights. The court also found Heather P. unfit.

¶ 16　　　　　　　　　　　　C. Best-Interest Hearing

¶ 17　　　　In August 2019, the trial court held a best-interest hearing. Respondent did not appear at the hearing. The court received best-interest reports and heard testimony from a case manager, a court appointed special advocate, and Heather P. The following is gleaned from the evidence presented.

¶ 18　　　　The minor, who was then 12 years old, had been placed with her maternal aunt for about a month. The minor's sister, who was born earlier that year and who was also in DCFS care, and her cousins also resided in the home. The minor embraced the role of being a big sister and seemed most happy when she was around her little sister. The minor's aunt provided a stable environment with reasonable expectations for chores and homework. The minor had behavioral issues, which the court appointed special advocate believed were due to respondent's and Heather P.'s lack of consistent attendance at visitations. The minor also struggled academically during the

prior school year, attended weekly therapy, and expressed a desire to return home to her parents. The minor's aunt indicated she would adopt both the minor and her sister if necessary.

¶ 19 Both respondent and Heather P. continued to struggle with substance abuse. Both tested positive for cocaine on a drug screen administered two weeks before the best-interest hearing and neither provided any evidence indicating they had enrolled in treatment. Both expressed approval with granting guardianship to the minor's aunt. Both were loving parents and interacted appropriately with the minor when they attended visitations. Respondent reported he was not at the best-interest hearing because of an interview. Heather P. testified both she and respondent wanted to remain sober to regain fitness.

¶ 20 The case manager recommended parental rights remain intact and the permanency goal be changed to guardianship. She believed the minor's parents would be able to have the minor returned to their care within six months if they immediately started participating in therapy, became sober, and completed drug screens. The case manager further believed it would be "devastating" if the minor's younger sister was later allowed to return to the parents and the minor was not. In stating the recommendation, the case manager acknowledged the minor continued to be adversely impacted by her parents' continued use of drugs and should be able to have closure.

¶ 21 The court appointed special advocate recommended parental rights be terminated and the permanency goal be changed to adoption. She believed terminating parental rights would take the minor out of "limbo"—the "maybe I'll go home, maybe I won't"—and provide her with consistency and stability. The court appointed special advocate did not believe respondent could complete therapy and obtain sobriety to meet minimal parenting standards to allow the minor to be returned to his care given the fact he was unable to do so over the prior year and a half. On

cross-examination, the court appointed special advocate indicated she would also support guardianship as it could provide the minor with consistency and stability. On redirect examination, she acknowledged guardianship would give the minor a false hope and she believed it was time for the back and forth to end.

¶ 22　　　　The State recommended parental rights be terminated and the permanency goal be changed to adoption. Respondent, Heather P., and the guardian *ad litem* (GAL) recommended parental rights remain intact and the permanency goal be changed to guardianship. The GAL specifically noted its recommendation was based on the testimony indicating it would be devastating to the minor if her sister was later returned to her parent's custody and she was not.

¶ 23　　　　Based on the evidence and recommendations presented, the trial court, after considering the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2018)), found it would be in the minor's best interest to terminate respondent's parental rights. The court also found it would be in the minor's best interest to terminate Heather P.'s parental rights. The court entered a written order terminating respondent's and Heather P.'s parental rights.

¶ 24　　　　This appeal followed.

¶ 25　　　　　　　　　　　　　II. ANALYSIS

¶ 26　　　　On appeal, respondent argues the trial court's findings he was an unfit parent and it was in the minor's best interest to terminate his parental rights were against the manifest weight of the evidence.

¶ 27　　　　　　　　　　　　A. Unfitness Finding

¶ 28　　　　Respondent asserts the trial court's finding he was an unfit parent was against the

manifest weight of the evidence. The State disagrees.

¶ 29　　　　In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 30　　　　The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2018)). Section 1(D)(m)(ii) provides, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected ***." *Id.*

¶ 31　　　　"Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

¶ 32　　　　In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). Courts are limited to that period "because reliance upon evidence of any

subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Id.* at 1046.

¶ 33        In this case, a relevant time period was September 14, 2018, to June 14, 2019. During that period, respondent (1) continued to use illegal substances, (2) failed to enroll in a recommended outpatient therapy to address his substance abuse issues, (3) failed to consistently attend drug screens, and (4) failed to consistently attend visitation. Respondent's substance abuse was an underlying cause for why the minor was taken into DCFS care. Despite that fact, respondent never enrolled in recommended outpatient treatment to address his substance abuse issues. The case manager testified she did not believe respondent would be able to meet minimal parenting standards of being drug free to have the minor returned to his care within the next six months. Based on this evidence, we find the trial court's unfitness finding is not against the manifest weight of the evidence.

¶ 34        As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other bases for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 35                              B. Best-Interest Findings

¶ 36        Respondent asserts the trial court's finding it was in the minor's best interest to terminate his parental rights was against the manifest weight of the evidence. The State disagrees.

¶ 37        At the best-interest stage, a "parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004). The State must prove by a preponderance of the evidence termination is in the child's best interests. *Id.* at 367. When considering whether termination of

parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2018).

¶ 38    This court will not reverse a trial court's finding termination of parental rights is in a child's best interests unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883, 932 N.E.2d 1192, 1199 (2010). Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 39    Respondent contends the trial court's finding is against the manifest weight of the evidence given (1) the evidence showing the minor desired to be with her parents and had only been placed with her maternal aunt for one month and (2) the fact the case manager and GAL recommended parental rights remain intact. While that evidence and those recommendations were certainly relevant, the court also had before it evidence of both respondent's and Heather P.'s continued failure to address their ongoing substance abuse and the negative impact it had on the minor as well as recommendations that parental rights be terminated. Given all of the evidence and recommendations presented, the trial court's finding it was in the minor's best interest to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 40                                    III. CONCLUSION

¶ 41    We affirm the trial court's judgment.

¶ 42    Affirmed.